Motions to dismiss appeal submitted November 25, 1947;
Allowed and denied December 30, 1947

# LEWIS ET UX., *v.* SHOOK ET UX., and LEE ET UX., and A. S. GRANT, Trustee

188 P. (2d) 148

*Hallock, Donald, Banta & Silven,* of Baker, for defendants-appellants.

*Gallagher & Gallagher* and *Anthony Yturri,* of Ontario, for defendants-respondents, Lee.

*Heilner, Grant & Fuchs,* of Baker, for plaintiffs-respondents Lewis, and A. S. Grant, trustee, respondent.

WINSLOW, J., (Pro Tempore)

This matter is here for consideration upon two motions to dismiss the appeal. A statement of the issues involved will materially aid our approach to the question presented. We shall refer to the Lewises as plaintiffs (they are likewise respondents), to the Shooks as appellants (they are likewise defendants), and to the Lees as defendants (they are likewise respondents).

On the 14th day of June, 1946, defendants entered into a contract to sell to appellants what we shall designate herein as four thousand acres of grazing land in Baker county. The full purchase price was $28,000, upon which $15,000 was paid upon the execution of the agreement, the balance to be paid as soon as title was furnished. Appellants were entitled to immediate possession of a portion of the property, and to possession of all of it not later than August 15, 1946.

Prior to the execution of this contract, appellants and plaintiffs had had some negotiations as to plaintiffs' taking part of the real property which appellants contemplated purchasing from defendants. Pursuant thereto, on the 15th day of June, 1946, appellants entered into a contract with plaintiffs for a sale of what we shall term three thousand acres of the land which appellants were purchasing from defendants. There was involved in this deal a small tract which the appellants were likewise purchasing from one Kivett. By the contract last referred to, plaintiffs agreed to pay appellants $23,000, payable $11,000 on or before three months, and the balance on or before six months from date of contract. The contract expressly provides that it was made subject to the consummation of the contract which appellants had made with de-

fendants and that, in case defendants failed in their performance thereof, the contract between appellants and plaintiffs should be at an end, and both parties released from all further obligation thereunder. This contract likewise provided that plaintiffs should have possession of a portion of the property which they were purchasing, at the time of the execution of the contract, and the balance not later than August 15, 1946.

Considerable difficulty ensued, and, on the 19th day of October, 1946, plaintiffs brought this proceeding against appellants and defendants seeking a declaratory judgment and decree as to their rights in the premises. In their complaint, plaintiffs make three major charges: (a) That the amount of merchantable timber upon the premises had been misrepresented to them, they claiming that it had been represented to them that there was at least 2,000,000 feet, while in fact there was only 105,000 feet thereon; (b) that it had been represented to them that a certain spring was on said premises, while in truth and fact said spring was not thereon; (c) that there was an existing encumbrance on said property in what is referred to as the Hobson contract, the same being a contract for sale of the timber by defendants to Hobson. There were other minor matters involved. They prayed for relief as follows:

"WHEREFORE, Plaintiffs pray for a declaratory judgment herein declaring the rights and status of all the parties hereto under said contracts and for a decree declaring and decreeing that the amount of timber was misrepresented to these plaintiffs; that the location of said spring was likewise misrepresented to these plaintiffs and that on account thereof and the other matters alleged in said complaint the plaintiffs have the right to elect to either

rescind said contract or to affirm the same and to have the purchase price thereof reduced by the amount which they have been damaged thereby and fixing and declaring the amount of such damage and further declaring and decreeing that the said Chriss Lee has failed to perform his said contract and that such failure is so substantial as to render the completion of the transfer contemplated under said Exhibit 'B' impossible or impracticable and for such other and further relief as to the Court may seem just and equitable and for plaintiffs costs and disbursements incurred herein.''

To this complaint appellants filed their answer in which they admit that it was represented to plaintiffs that there was 2,000,000 feet of timber upon said premises, but alleged they were unwilling to accept plaintiffs' figure of 105,000 feet as being the maximum amount of merchantable timber located thereon. They admit that it had been represented to plaintiffs that the spring was located on the premises and that the same was not located thereon, but assert that this matter could be adjusted by way of damages. With reference to the Hobson contract, they admitted its existence, but claimed that Hobson had discontinued cutting and had cut and removed only a few thousand feet, that the controversy over that contract would be a controversy between Hobson and defendants, and that plaintiffs should not be permitted to rescind on account thereof. There are some other defects in the title referred to in this answer to which we deem it unnecessary to refer here. Appellants prayed for relief as follows:

"WHEREFORE, having fully set forth their contentions herein, these defendants join with the plaintiffs in praying a full and complete declaration and declaratory judgment, fixing and determining the rights of the parties herein, with the

further, incidental, and alternative relief hereinabove specified, and ask the Court to make such declaration and enter such decree in the premises as will fully adjudicate and determine the rights of the parties, and protect the rights and interests of these defendants in the respects above mentioned, and that these defendants have such other, further and more general relief as the Court may deem equitable in the premises, including their costs and disbursements herein incurred, and a reasonable attorneys' fee to be allowed their counsel, as above set forth.''

Defendants filed their answer which in substance denied the allegations of plaintiffs' complaint and, by way of further and separate answer, set forth their contract with appellants and alleged their ability and willingness to perform the same, and prayed for relief as follows:

''WHEREFORE, this answering defendant prays for a decree of this Court as follows:

''A. Holding and decreeing that this defendant has tendered full and complete performance of all covenants and terms of his contract with said R. D. Shook.

''B. Holding and decreeing that said Shook is now in default for the non-payment to this defendant of the sums and amounts due this defendant under the terms of said contract.

''C. For a decree fixing a reasonable time in which such payment shall be made, not to exceed 30 days, and further decreeing that thereafter all right, title and interest of said Shook and the plaintiffs herein cease and terminate, and restoring this defendant to the full use, possession and enjoyment of said premises, described in said contract.

''D. And for such other and further relief as to the Court may seem meet and equitable, including this defendant's costs and disbursements herein expended.''

After the execution of the contract between appellants and plaintiffs, plaintiffs took possession of the premises pursuant to its terms; but, at the time of the filing of their complaint, plaintiffs, desiring to rescind, if the court should grant them that right, and, fearing that continued possession might stand in their way, quit possession. Thereupon, or some time thereafter, the exact date is not disclosed, appellants resumed possession. They now contend that it was for the protection of the property pending the litigation.

Upon trial, the court entered a decree which may be summarized briefly as follows: The contract between plaintiffs and appellants was cancelled and rescinded, certain mortgages which plaintiffs had given to appellants were required to be satisfied, and certain monies were ordered returned to plaintiffs, thus placing the parties in statu quo. The contract between defendants and appellants was enforced, and appellants were required to pay the full balance of the purchase price upon certain adjustments and assignments being made, which were to be made by defendants within thirty days.

After the entry of the decree and within the time provided for therein, defendants complied with these requirements.

The decree was dated the 26th of June, 1947. On July 26th, appellants filed their notice of appeal and on August 5th filed their undertaking on appeal and likewise, on August 5th, deposited with the clerk of the court the sum of $13,000, the balance due upon their contract with defendants, the same being deposited for the purpose of staying execution. Upon the same day, the court entered its order staying execution. In September 1947, appellants leased a portion of the premises

involved to one Guy Strong, for the remainder of the grazing season, for the sum of $100.

Pending this litigation, plaintiffs sold some cattle upon which they had given appellants a chattel mortgage for a part of the purchase price of the grazing land. The money derived from said sale over and above the amount required to pay some prior mortgages was deposited with A. S. Grant, as trustee, to abide the outcome of this litigation. Accordingly, Grant was brought in and made an additional party defendant pending the litigation.

Motions to dismiss the appeal are now filed on behalf of plaintiffs and A. S. Grant, trustee, seeking to have the appeal dismissed as to them, and on behalf of defendants seeking to have the appeal dismissed as to them. In both motions the ground for dismissal urged is that since the rendition of the decree, appellants have acquiesced therein (1) by paying the balance due thereon, (2) by taking possession and using the premises, and (3) by leasing a portion thereof to Guy Strong.

We will dispose of these matters in the order enumerated above.

■■ (1) When a judgment or decree is rendered against a party, his payment of the sum awarded will not preclude him from maintaining an appeal, unless it satisfactorily appears that the payment was not coerced and was made with the view of settlement. *Staiger v. Holman,* 144 Or. 67, 69, 6 P. (2d) 43, 18 P. (2d) 591, 23 P. (2d) 917; *Heider v. Unicume,* 142 Or. 410, 411, 14 P. (2d) 456, 20 P. (2d) 384; *Duniway v. Cellars-Murton Co.,* 92 Or. 113, 115, 170 P. 298, 179 P. 561; *Eilers Piano House v. Pick,* 58 Or. 54, 113 P. 54; *Moores v. Moores,* 36 Or. 261, 59 P. 327; *Edwards v. Perkins,*

7 Or. 149. In this case the record is clear that the so-called payment was in fact a deposit for the purpose of staying execution pending the appeal.

In the early case of *Edwards v. Perkins,* supra, we said:

"The question is, can a party to a judgment against himself appeal after he has voluntarily paid the judgment? When an appeal is taken, an undertaking must be given by appellant and filed with one or more sureties, to the effect that the appellant will pay all damages, costs and disbursements which may be awarded against him on the appeal; but such undertaking does not stay the proceedings unless the undertaking further provides to the following effect: 'If the judgment or decree appealed from be for the recovery of money or personal property, or the value thereof, that if the same or any part thereof be affirmed, the appellant will satisfy it so far as affirmed.' So in this case, if the appellant had not paid the judgment, the respondent could have had an execution issued on the judgment and compelled him to pay it notwithstanding the appeal. We think he is in no worse position from having paid the judgment voluntarily than if he had settled the execution with costs. There is nothing in this point."

See also *Heider v. Unicume,* supra. The point is not well taken.

■ (2) The record is clear that appellants' possession of the premises involved commenced prior to the rendition of the decree and, for that reason, does not constitute an acquiescence in the decree. *Fluhrer v. Bramel,* 158 Or. 694, 699, 72 P. (2d) 47, 73 P. (2d) 265, 77 P. (2d) 824; *Turnbow v. Keller,* 142 Or. 200, 201, 12 P. (2d) 558, 19 P. (2d) 1089; 4 C. J. S., 396, 397.

(3) "A party who voluntarily acquiesces in, ratifies, or recognizes the validity of, a judgment,

order, or decree against him, or otherwise takes a position which is inconsistent with the right to appeal therefrom, thereby impliedly waives, or is estopped to assert, his right to have such judgment, order, or decree reviewed by an appellate court; and this rule has been held to apply where the acquiescence, or ratification was either partial or in toto. However, in order to be a bar of the right of appeal on the ground of acquiescence, the judgment or decree must have been rendered and entered, and the acts relied on, as waiver or estoppel on such ground, must be such as to clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary, and absolute acquiesence, with the intent, as has been held, to ratify or confirm the judgment as rendered and to acquiesce and abandon the right of appeal. * * *"

Does the leasing of a portion of this grazing land for $100 constitute such acquiesence in the decree as to bar appellants from maintaining this appeal? Appellants contend that this was only a part of their method of protecting this property pending this litigation.

In *Kellogg v. Smith*, 70 Or. 499, 142 P. 330, this court had before it for consideration a suit to set aside and annul a sale of a laundry upon the ground of fraud. The court cancelled the sale, whereupon the defendant took possession, operated and then leased the laundry, and at the same time appealed from the decree. Upon motion to dismiss the appeal, we said:

"It must be conceded that it was the right and duty of the defendant to protect and preserve the property described in the chattel mortgage, and, if his possession of the machinery, equipments, etc., had been limited to such care, the motion to dismiss the appeal would necessarily be denied. It appears, however, that his management of, and control over,

such property extended far beyond its mere protection. * * * From an inspection of the affidavits referred to it is apparent that the defendant used and dealt with the mortgaged property as though he then intended freely to accept and accede to the terms of the decree rendered herein, and, such being the case, he will not be permitted now to change the position which he voluntarily assumed, and is estopped from asserting a different attitude: Culver v. Randle, 45 Or. 491 (78 Pac. 394), and note collating the preceding cases on this subject; Roots v. Boring, Junct. Lum. Co., 50 Or. 298 (92 Pac. 811, 94 Pac. 182); Oregon Elec. Co. v. Terwilliger Land Co., 51 Or. 107 (93 Pac. 334, 930); Thomas v. Booth-Kelly Co., 52 Or. 534 (97 Pac. 1078, 132 Am. St. Rep. 713); Elwert v. Marley, 53 Or. 591 (99 Pac. 887, 101 Pac. 671, 133 Am. St. Rep. 850); Eilers Piano House v. Pick, 58 Or. 54 (113 Pac. 54)."

The case of *Fluhrer v. Bramel,* supra, involved a suit to rescind a contract for the sale of a service station. The decree annulled the contract of sale thereby adjudicating that Bramel was the owner of the property. Pending the litigation, Bramel rented the property for the term of one year for $35 a month. Bramel likewise attempted to appeal from said decree. A motion to dismiss was filed wherein it was asserted that the lease had been made by Bramel "since the entry of said decree," and it was contended that, by making said lease, Bramel had acquiesced in the decree. Bramel attempted to justify his conduct by asserting it was necessary "to make some use of the property to get money with which to keep up the property during the pendency of this litigation." This court held, however, that Bramel had acquiesced in the decree by treating the property as his own, and dismissed the appeal. On rehearing, however, the court's attention was called to the fact that the lease

had actually been made prior to the decree. Thereupon the appeal was reinstated and the case considered on its merits.

In the case of *Elwert v. Marley,* 53 Or. 591, 593, 99 P. 887, 101 P. 671, plaintiff brought suit for a decree restraining the defendant from making use of certain wharfage rights. Defendant claimed the right to the use of the wharf in question. The trial court rendered a decree denying the defendant the right to use the wharf. Defendant appealed from the decree, but, subsequent to the entry thereof, entered into a lease with plaintiff's grantee of the land in question for the use of said wharf. Thereupon plaintiff moved to dismiss the appeal on the ground defendant took a lease for the use of the wharf, in effect conceding that he had no right to the same, and hence his conduct constituted an acquiescence in the decree. This court sustained this contention and dismissed the appeal.

The case of *Woodard v. Willamette Val. Irr. Land Co.,* 89 Or. 10, 173 P. 262, involved an action to recover payments that had been made upon a real estate contract, the plaintiff claiming to have rescinded the same. The defendant answered and, among other defenses, set up by way of counterclaim a demand for rental of the premises, during the time the same had been occupied by the plaintiff. Thereupon the plaintiff contended that this effort upon the part of the defendant to collect rent constituted an acquiescence in the rescission of the contract and rendered the rescission mutual. In sustaining this position of the plaintiff, this court said:

"As we view this case, the question of mutual rescission of the contract to purchase is the determinative one. It will be observed that in its two separate answers the defendant by appropriate

allegations demanded a recovery from plaintiff of the sum of $170 as the reasonable value of the use of the premises during the time they were occupied by him under the terms of the sale contract. *Such a recovery could not be had under any other theory than that the contract had been terminated.''* (Emphasis supplied.)

■ So here, the renting of a portion of this property by appellants could be made legally under no other theory than that the contract had been terminated. This would constitute an acquiescence in the decree as rendered. The preservation of the property did not require this rental arrangement. It cannot be justified as protection of the property pending litigation. True, the amount received as rental was small, but this does not change the principle involved. The leasing of the property by appellants to Strong constituted a recognition of the validity of the decree. It was an acquiescence in or a ratification thereof. The position taken by appellants in connection therewith was inconsistent with the right to appeal from the decree, and estops them from asserting their right to have said decree reviewed by this court. It follows, therefore, from the foregoing that the appeal, as to plaintiffs and defendant A. S. Grant, trustee, should be and the same is hereby dismissed.

■ Quite a different situation is presented with reference to the motion of defendants Lee. The contract between defendants and appellants provides that appellants are entitled to possession. Both appellants and defendants sought to have this contract sustained. The court sustained it. The conduct of appellants in leasing this property is not inconsistent with their position with reference to this contract and this decree, as between themselves and defendants Lee. It is in

complete harmony therewith. While appellants sought to have the court affirm the contract between themselves and defendants Lee, nevertheless they did contend there had been misrepresentations made to them by defendants Lee. They contended defendants Lee made misrepresentations to them as to the timber and as to the spring, but insisted that these matters could be adjusted by way of abatement of the purchase price. It would be premature for us to make any suggestions here as to what relief appellants might be entitled to, as against the defendants, upon the consideration of this appeal upon its merits. Suffice it to say that the leasing of the property is in no wise inconsistent with their position that the contract be carried out. It therefore follows that the motion of the defendants to dismiss the appeal should be and the same is hereby denied.

Since writing the foregoing, a stipulation has been filed signed by plaintiffs and respondent Grant, as trustee, and appellants which provides in effect that this appeal may be dismissed in part, as to said plaintiffs and trustee, and otherwise continued in full force and effect. However, the jurisdiction of this court is not determined, limited or enlarged by the stipulation of the parties. *Stretch v. Murphy*, 166 Or. 439, 448, 112 P. (2d) 1018; *State ex rel. Kahn v. Tazwell*, 125 Or. 528, 542, 266 P. 238, 59 A. L. R. 1436; *Oregon Growers Cooperative Association v. Lentz*, 107 Or. 561, 212 P. 811; *Goodenough Mercantile Co. v. Galloway*, 48 Or. 239, 246, 84 P. 1049; *Wong Sing v. Independence*, 47 Or. 231, 83 P. 387; *French v. Willer*, 126 Ill. 611, 18 N. E. 811, 9 Am. St. Rep. 651, 2 L. R. A. 717. Therefore, the order will be as above indicated.