## KIERNAN *v.* TERRY.

[ S. C. 38 Pac. 671.]

</div>

1. PLEADING — DESCRIPTION OF PREMISES — LANDLORD AND TENANT.—In an
   action between landlord and tenant for use and occupation, where there
   are no writings, it is sufficient if the premises can be ascertained and
   located from the allegations of the complaint; thus a description of cer-
   tain premises as "the northeast corner of Ross Island," although it might
   not be sufficient, standing alone, is rendered definite and certain by the
   further allegation that the defendant used and occupied said premises for
   a stated period, since this latter allegation furnishes data from which the
   premises can be readily located.

2. LANDLORD AND TENANT — ESTOPPEL.— A tenant having taken possession
   under a lease is estopped, so long as he continues in possession there-
   under, to deny his landlord's title to the premises at the time the lease
   was made; and, even after the lease has expired, a tenant cannot deny the
   landlord's title, without surrendering possession, or giving notice that he
   will thereafter claim under another and valid title.

3. LANDLORD AND TENANT — TITLE OF LANDLORD.— The payment of rent raises
   an implication of a tenancy and of a liability to pay further rent during
   occupancy; and once the relation of landlord and tenant is shown to
   exist, the landlord need not show any title whatever in himself— it will
   be sufficient that the defendant is a tenant paying rent.

4. DENIAL BY TENANT OF LANDLORD'S TITLE.— The fact that a lessee, without
   surrendering possession, notified the lessor that he would pay no further

rental, because the lessor had no title to the premises, did not sever the relation of landlord and tenant; nor did the fact that a tenant of premises occupied by a floating-house moored to piles in a river removed a pontoon walk connecting the float with the lessor's upland, sever the relation of landlord and tenant.

5. LANDLORD AND TENANT — ESTOPPEL.— The estoppel of a tenant to deny his landlord's title is not removed by fraudulent representations of the latter inducing him to pay rent and acknowledge the tenancy, where he failed to surrender possession as soon as he discovered the alleged fraud.

6. PLEADING FRAUD.— The defense of fraud at the inception of a lease is not available in an action for rent under a plea of set-off or counterclaim.

APPEAL from Multnomah: HARTWELL HURLEY, Judge.

This is an action by John Kiernan against Joseph Terry commenced in a justice's court to recover one hundred and eighty dollars, as rent for the use and occupation of certain property described as "the premises known as the northeast corner of Ross Island, situated in the county of Multnomah, State of Oregon," which it is alleged plaintiff leased and let unto the defendant August first, eighteen hundred and ninety-two, "for a floating-house or beer garden." It is further alleged that fifteen dollars per month is a reasonable rental therefor, and that defendant occupied the same for twelve months, to August first, eighteen hundred and ninety-three. The answer, after denying the allegations of the complaint, alleges that on or about November first, eighteen hundred and ninety-one, the defendant purchased from one Tom Williams the floating-house or boat which was then anchored in the Willamette River, in Multnomah County, Oregon, at a point opposite the northeast corner of Ross Island; that plaintiff falsely represented to him that he was liable for rent, and demanded payment thereof from November first, eighteen hundred and ninety-one; that defendant relied upon said representations, and, in ignorance of his rights in the premises, paid to plaintiff, March first, eighteen hundred

and ninety-two, sixty dollars, and on August eighth, eighteen hundred and ninety-two, an additional sixty dollars; that said representations were false and fraudulent, and on account thereof plaintiff has received to the use and benefit of defendant the sum of one hundred and twenty dollars, and prays for judgment for that amount. These allegations are put in issue by the reply. The averments of the complaint appear to have been supported by the evidence, from which it further appears the actual *situs* of the premises for which rent is sought to be recovered is that which was occupied by the said floating-house or boat fastened to piles driven in the Willamette River opposite the northeast corner of Ross Island, fifty-five feet from shore at low water, and between the channel of the river and the shore, so as not to interfere with the free use of the river for the purposes of navigation. The boat was originally connected with the Ross Island shore by a pontoon walk, which, as plaintiff claims, was removed by defendant without his knowledge. Evidence was also given tending to show that on the eighth day of August, eighteen hundred and ninety-two, defendant notified plaintiff that he would not pay any more rent, for the reason that plaintiff had no rights in the premises, claimed to have been leased.

The instructions of the court below to the jury, of which the appellant complains, necessary to notice here, are as follows: "In this case the evidence shows, as I understand it, and upon this there is no dispute, that the premises plaintiff claimed rent for was fifty-five feet out in the Willamette River; and, under the allegations of the complaint, viz., that the plaintiff leased ·to the defendant the northeast corner of Ross Island, proof that he occupied a place fifty-five feet from Ross Island would not be proof of the allegations of the complaint." "That in order to entitle the plaintiff to recover any sum they must

find from the testimony that the northeast corner of Ross Island was rented or leased to the defendant, and that defendant leased these premises — that is, the northeast corner of Ross Island — from plaintiff, and agreed to pay him this sum, or whatever was reasonable." "It is claimed that the answer sets up the manner of the occupancy of these premises, and therefore it is claimed that it aids the complaint, but I do not think it does, because there is no allegation that he occupied any other premises than out in the stream, or that he agreed to pay rent for the stream. If he had set up that he had entered into an agreement to pay rent for these premises, that would aid the complaint, but there is no such allegation; it simply says that he occupied the premises out in the river, and that Kiernan represented that he was liable to pay rent for that, and he did pay, that is all the allegation there is that he paid a certain amount of rent." "If you find from the testimony that from the time this amount is claimed, the one hundred and eighty dollars, he did not occupy any portion of Ross Island, — that is, the land, — but was anchored out in the river fifty-five feet from the shore, then in that case you cannot find for the plaintiff, because the proof does not substantiate the allegations of the complaint." There was a verdict for defendant, and from the judgment rendered thereon plaintiff appeals.      REVERSED.

For appellant there was a brief and an oral argument by *Mr. Arthur C. Emmons.*

For respondent there was a brief by *Messrs. Gearin, Silvestone, Murphy & Brodie,* and an oral argument by *Mr. Geo. A. Brodie.*

Opinion by MR. JUSTICE WOLVERTON.

26 OR.—63.

1. Two questions are presented by this record for our consideration. *First*, does the proof support the allegations of the complaint as to the *situs* or location of the premises for which plaintiff seeks to recover rent? and, *second*, is the position of the defendant such that he is enabled to dispute the title of plaintiff in the premises actually occupied by him? The proof shows that the floating-house or beer garden was anchored to piles driven in the bed of the Willamette River fifty-five feet from the Ross Island shore, and between the shore and the channel of the river, at such a point as not to interfere with the free use of the river for the purpose of navigation. The defendant paid rent to the plaintiff for the premises occupied by this floating-house for the space of eight months immediately preceding the date of the alleged leasing, for which rent is sought to be recovered. During the greater part of these eight months the house or boat was connected with the northeast corner of Ross Island by a pontoon walk. This walk defendant removed prior to August first, eighteen hundred and ninety-two. As to whether plaintiff had knowledge of this removal is in dispute, but the fact is not material. The defendant actually used and occupied the premises in question for the entire twelve months for which rent is sought to be recovered; but it is contended that this proof cannot support the action, for the reason that the description of the premises contained in the complaint is so vague and indefinite as to render the lease void if one existed, and for the further reason that the defendant did not occupy the premises attempted to be described. This is the ordinary action for use and occupation, and lies whenever the conventional relation of landlord and tenant subsists between the parties to it upon an agreement express or implied: Taylor's Landlord and Tenant, § 636. No claim is made, nor does the evidence disclose, that any lease in writing was executed so as to

confine the parties to the particular description therein contained. It is sufficient, therefore, if the premises can be ascertained and located from the allegations of the complaint. It is averred that "plaintiff leased and let unto the defendant the premises known as the northeast corner of Ross Island, situated in the county of Multnomah, State of Oregon, for a floating-house or beer garden." If the averments touching these premises had stopped here, it is doubtful if the description would have been sufficient to support the lease, but it is further alleged "that defendant used and occupied said premises aforesaid from the first day of August, eighteen hundred and ninety-two, to the first day of August, eighteen hundred and ninety-three." Construing these two allegations together, it becomes apparent that what before was a vague and possibly insufficient description is now rendered definite and certain.

It is not an uncommon thing in practice to describe premises leased as those certain premises situated (giving the county and state) now in the possession of, or now occupied by, some certain person (naming him); and no question is made of the sufficiency of such a description. A lease of a farm now in the possession of A will pass such portion of the estate as A is in possession of, though it will not pass such portion as he does not possess. The premises described as "the building now or lately occupied by Richard Roe," or "the premises known as the Warren Farm," or "the Phelps Place," designating the town in which they are located, has been held to be sufficient, because the lease furnishes data from which the premises demised can be identified: Wood on Landlord and Tenant, § 211. So it is with this complaint. It furnishes sufficient data from which the identical premises for the use and occupation of which the rental is alleged to be due from defendant can readily be ascertained and

located. The maxim *id certu est quod certum reddi potest* is well adapted to the situation. This is possibly a liberal construction of the complaint, but it is undoubtedly permissible, in view of the fact that neither a demurrer nor motion to make more definite and certain was interposed. The defendant has not been taken by surprise, nor misled in any manner. His answer and the evidence adduced by him go to show unmistakably that he was fully equipped and prepared to contest the further payment of rental for the identical premises which plaintiff had in mind. We therefore conclude that the premises used and occupied by the defendant were sufficiently described in the complaint to entitle plaintiff to recover in this action, and that the proof offered tended to support the allegations of the complaint.

2. As to the second proposition, it is not disputed that the defendant occupied the premises in question, and paid rent therefor to the plaintiff for eight months continuously, immediately prior to the term for which rent is now sought to be recovered. His occupancy has been unbroken and continuous from the first day of November, eighteen hundred and ninety-one, to the first day of August, eighteen hundred and ninety-three. His only defense to the further payment of rent for the same premises, as disclosed by his answer, consists in specific denials of the allegations of the complaint. No claim is made that plaintiff was ousted by any person holding a superior or better title, and that defendant has attorned or is liable to attorn to him, or that he at any time surrendered the premises to plaintiff, after acknowledging the existence of the relation of landlord and tenant as between them. It goes without saying that such a defense would have to be affirmatively set up in the answer, and could not be proven under an issue made by specific denials. It is a well settled rule of law that a tenant, having taken possession under a lease,

is estopped to deny his landlord's title at the time it was made, so long as he continues in possession under the lease.   This rule is founded upon the injustice of permitting a person who has obtained possession of the property of another by admitting his title, to deny that title, and, in case of the landlord's failure to establish it, to hold the premises himself.   And even after his lease has expired, it is not competent for him to deny his landlord's title without surrendering possession to him, or attorning, or at least giving notice to his landlord that he shall claim under another and valid title: *Hilbourn* v. *Fogg*, 99 Mass. 11; *Miller* v. *Lang*, 99 Mass. 13; *Morse* v. *Goddard*, 13 Met. (Mass.), 179, 46 Am. Dec. 728.

3.   The payment of rent raises the implication of a tenancy and of a liability to pay further rent during occupancy: *Voigt* v. *Resor*, 80 Ill. 331; *Cressler* v. *Williams*, 80 Ind. 368; *Leitch* v. *Boynton*, 84 Ill. 179.   Where the relation of landlord and tenant is shown to exist, the landlord is not required to show that his title is good against all the world, nor is it necessary to prove title at all.   The only thing needful to be shown is that defendant entered or occupied as tenant: *Cressler* v. *Williams*, 80 Ind. 368.   It is sufficient to establish plaintiff's title to show that defendant is a tenant paying rent: *People* v. *Simpson*, 50 Cal. 306.   These authorities render it unnecessary to consider what, if any, title the plaintiff had in the premises occupied by defendant's floating-house or boat.   There was evidence tending to prove that defendant admitted title to be in the plaintiff by occupancy, and the payment of rent to him for the premises in question for eight months, and that defendant thus continued to occupy without apparent change of relationship.

4.   The fact, if such is a fact, that defendant, without surrendering possession, notified the plaintiff that he would not pay anything more as rental, for the reason that

plaintiff had no rights in the premises, did not sever the relation of landlord and tenant, and much less did the removal of the pontoon walk by the defendant have that effect.

5.    But it is claimed that defendant was induced to pay rent, and thereby to acknowledge plaintiff as his landlord, through the fraudulent representation that the defendant was liable to plaintiff for rent.    If such was the case, and the representation amounted to a legal fraud, which we do not believe, defendant should have surrendered possession as soon as he discovered the alleged fraud, and thereby severed his relations with plaintiff, if he desired to rescind: *Milliken* v. *Thorndike*, 103 Mass. 386; *Whitney* v. *Allaire*, 4 Denio, 554.

6.    However, defendant's further and separate defense does not purport to be directed to plaintiff's cause of action, and amounts simply to a plea of set-off or counterclaim.    Under this plea it would not be competent to defeat any contract of leasing that may exist between the parties by reason of fraud in its inception.    From these considerations it is apparent that the court below was in error in its instructions to the jury, hence the judgment is reversed and a new trial ordered.

REVERSED.