[Civ. No. 20192. First Dist., Div. Three. May 22, 1963.]

EDWARD ELZARIAN, Plaintiff and Appellant, v. RAY B. WISER et al., Defendants and Appellants; MARK E. KIRK, Defendant and Respondent.

[Civ. No. 20193. First Dist., Div. Three. May 22, 1963.]

LOUIS F. OPHELIA, Plaintiff and Appellant, v. RAY B. WISER et al., Defendants and Appellants; MARK E. KIRK, Defendant and Respondent.

(Consolidated Cases.)

Fred F. Cooper and Eugene K. Lawlor for Plaintiffs and Appellants.

Charles O. Bruce, Francis T. Cornish, Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Defendants and Appellants.

Nichols, Williams, Morgan & Digardi and Jesse Nichols for Defendant and Respondent.

DRAPER, P. J.—These consolidated actions seek damages for fraud in the sale of stock of Uni-Insurance Service Corporation. Trial opened before a jury, but on the sixth day jury was waived and the cases continued to judgment before the court alone. Defendant Pickrell was president of the corporation, defendant Emerson E. Wiser was vice-president and general manager, and both were directors, as were defendants Ray B. Wiser and Kirk. Nonsuit was entered in favor of Kirk. Plaintiffs had judgment against both Wisers and Pickrell. Defendants Wiser appeal from the judgment against them, defendant Pickrell separately appeals from the judgment against him, and plaintiffs appeal both from the judgment of nonsuit as to Kirk and from the judgment in their favor insofar as it fails to order civil arrest of defendants.

In May 1954, the corporation obtained from the Commissioner of Corporations a permit to issue shares of its stock. The permit allowed issuance to named individuals only, required deposit in escrow of issued shares, and specifically provided that owners "shall not consummate a sale

or transfer'' of shares, ''or receive any consideration therefor, until the written consent of [the commissioner] shall have been obtained.''

In May 1955, defendant Emerson Wiser agreed to sell one unit of shares issued to him to plaintiff Ophelia for $50,000. Half the price was paid at date of agreement, and the remaining half two months later. In November 1955, defendant Ray Wiser sold a half unit of his stock to plaintiff Elzarian for $25,000, the price being paid to defendants Wiser. No consent to these transfers was made until long after the sales and payments.

On March 26, 1956, each plaintiff executed a request that the commissioner authorize transfer to him of the escrowed shares he had purchased. Each request asserted that the plaintiff had ''full knowledge'' of the conditions of the escrow.

Elzarian's complaint was filed July 31, 1958, and that of Ophelia October 16, 1958. Each joined the present defendants and the corporation, and alleged false representation by all defendants that ''said corporation had a permit from [the commissioner] authorizing it to sell stock to plaintiff.'' Each plaintiff also alleged that ''defendants, and said corporation, in fact had no license or permit from [the commissioner] authorizing them or any of them to sell stock to plaintiff.'' Each filed amended complaint February 16, 1960, alleging false representations that the corporation had a permit ''to sell and transfer stock'' to plaintiff, and that ''defendants intended to, and would, have the stock issued to plaintiff immediately and delivered into escrow in his name.'' Plaintiff Ophelia alleged for the first time in his amended complaint that defendants falsely represented that defendant Kirk ''had purchased one share of said stock for $50,000.00'' (in fact, Kirk had paid but $26,000). Demurrer to this complaint was sustained and on March 25, 1960, each plaintiff filed a second amended complaint, on which the action was tried. These complaints alleged the same misrepresentations quoted above from the first amended complaints.

■■ One who sells stock, for the issuance of which a permit of the Commissioner of Corporations was required, impliedly represents that such permit was issued. If there be no such permit, the buyer has a cause of action for fraud, which does not accrue until discovery (*Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 525-526 [86 P.2d 102]; see also *Duntley* v. *Kagarise,* 10 Cal.App.2d 394, 397 [52 P.2d 560]). The action may be brought within three years of the

buyer's discovery of the facts constituting the fraud (Code Civ. Proc., § 338, subd. 4; *Gormly* v. *Dickinson,* 178 Cal.App. 2d 92, 104 [2 Cal.Rptr. 650]). The same rule applies where a permit exists but the sale is made in violation of its terms (*Taormina* v. *Antelope Mining Corp.,* 110 Cal.App.2d 314, 320 [242 P.2d 665]).

Defendants Emerson E. and Ray B. Wiser concede their participation in the sales to plaintiffs. They argue, however, that the statute of limitations barred the action. The contention is that the original complaint was based on the entire absence of a permit to the corporation to sell any stock. In fact, a permit had been issued, and the true basis of plaintiffs' recovery is that the permit was violated in that the commissioner had not consented to the sales to plaintiffs. The Wisers argue that this claim is not within the general set of facts stated in the original complaint, but is set forth for the first time in the amended complaints filed February 16, 1960. If this be so, the action is barred, for the court found that the facts were discovered by plaintiffs March 26, 1956, when they formally requested the commissioner's consent to transfers to themselves.

The original complaints did allege a misrepresentation that the ''corporation had a permit . . . authorizing it to sell stock'' to each plaintiff. Defendants Wiser make much of the fact that the amended complaints allege the misrepresentation to be that the corporation had a permit to sell ''and transfer'' stock to plaintiffs. They argue that plaintiffs could not recover on the original complaints because the corporation did have a permit to issue its shares, and the allegation that it had no authority to sell to plaintiffs is irrelevant because it was not the corporation, but individual shareholders, who made those sales. We are unimpressed. Each original complaint did aver that ''defendants, and said corporation, in fact had no license or permit . . . authorizing them, or any of them, to sell stock to plaintiff.'' Thus lack of authority in any individual defendant to sell to plaintiffs was adequately raised in the original complaints.

Under the modern rule, an amended complaint is deemed filed, for purposes of the statute of limitations, on the date the original complaint was filed, if the recovery sought by the amendment is ''on the same general set of facts as those alleged in the original complaint'' (*Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596, 601 [15 Cal.Rptr. 817, 364 P.2d 681]). This test is clearly met

here. Even under the older rules denying such retrospective effect if a ''wholly different cause of action'' or a new legal theory were stated in the amendment (see cases reviewed *id.*, pp. 600-601), we deem the original complaint adequate to stop the running of the statute. We therefore reject the contention that the actions were barred because the statute continued to run until filing of the amended complaints.

This conclusion, however, applies only to the recovery for sales of stock in violation of the permit. It does not apply to plaintiff Ophelia's charge of fraudulent misrepresentation that Kirk had paid $50,000 for one unit of stock, whereas he in fact had paid but $26,000. This misrepresentation was not even remotely suggested until the amended complaint was filed. It arises in a factual context utterly unrelated to violation of the Corporate Securities Act, which was the sole factual basis of the original pleading. The trial court found that Ophelia discovered the falsity of representation as to Kirk's purchase in October 1956. The amended complaint which first mentioned this misrepresentation was not filed until February 16, 1960. Thus the statute had run as to the claimed misrepresentation of the price paid by Kirk, and the findings must be modified by striking their reference to that item.

This determination does not require reversal as to defendants Wiser. Their implied representation that the sales were in conformity with the commissioner's permit was untrue, and the findings on this issue fully support the judgment against them. The measure of damages applied is that applicable to a void sale. The findings make it abundantly clear that the misrepresentation as to the Kirk sale was not an essential of the judgment. It was found that only Emerson Wiser and Pickrell made this representation, yet the judgment is jointly entered against them and Ray Wiser, who did not participate at all in the Kirk representation.

All appellants assert that the statute of limitations began to run on the dates of sale, because plaintiffs were placed on notice as to the permit conditions by the language of the written purchase agreements. Each agreement recites that the certificate being purchased ''is now held in escrow'' by a named bank, and is to be delivered ''upon release from escrow.'' This contention has no application to plaintiff Elzarian, since his action was commenced within three years of his purchase. As to Ophelia, who bought in May 1955 and did not file his complaint until October 16, 1958, the court found that he ''was not aware'' of the illegality of the sale nor was

he "in possession of facts which would put a reasonable man on inquiry," until less than three years before filing. The agreement's reference to "escrow" did not necessarily imply an escrow under order of the commissioner. In the light of Ophelia's testimony that use of the term had been otherwise explained to him by the Wisers, that he did not know of the absence of the permit until 1956, and that he would not have purchased had he known of the invalidity, we cannot hold as a matter of law that he had knowledge at the time of purchase. ■ "The courts will not lightly seize upon some small circumstance to deny relief to a party . . . defrauded" (*Victor Oil Co.* v. *Drum,* 184 Cal. 226, 241 [193 P. 243]). The issue was one of fact (*Kallmeyer* v. *Poore,* 52 Cal.App.2d 142, 149 [125 P.2d 924]), and the trial court, upon substantial evidence, has resolved it in favor of plaintiffs.

■ Defendants also contend that plaintiffs' execution of consents to transfer in escrow, dated March 26, 1956, constituted ratification of the original sales and waiver of their illegality. Aside from the doubtful application of these doctrines to violations of the Corporate Securities Act (*Mary Pickford Co.* v. *Bayly Bros., Inc., supra,* 12 Cal.2d 501, 524) the findings of fact are against defendants. The court found, on substantial evidence, that plaintiffs' signatures were obtained only by representations that they were necessary to effect a 10-for-1 split of the stock. Thus the requests for transfer, while they gave notice of invalidity of the original sales, did not amount to ratification or waiver.

■ Defendants also urge that the court erred in awarding as damages the amount paid for the shares, rather than that amount less the value of what was received. But the sales to plaintiffs were in violation of the permit, and therefore void (*Duntley* v. *Kagarise, supra,* 10 Cal.App.2d 394, 397; *Black Point Aggregates, Inc.* v. *Niles Sand & Gravel Co.,* 188 Cal.App.2d 375, 379 [10 Cal.Rptr. 761]). Thus the price paid is the measure of damages.

Defendant Pickrell, on his appeal, adopts the brief of the Wisers as to the statute of limitations and the impropriety of the measure of damages applied. For the reasons given above, his appeal must, to this extent, fail.

Pickrell, however, raises another issue wholly distinct from those urged by defendants Wiser. The Wisers concede, as they must, their participation in the sales. Thus if there is any liability, they are properly held.

■ Pickrell, on the contrary, argues strongly that the

evidence is insufficient to warrant a finding of such participation by him. In its announcement of decision, the trial court stated that it ordered judgment against Pickrell "with considerable reluctance," and did order judgment against him "only as to the second cause of action." That count, although it incorporated the allegations as to invalidity of the sales, was the only count alleging misrepresentation of the price paid by Kirk. We have already pointed out that this allegation came too late, and that action upon it was barred. The court's announcement also made clear that it relied heavily upon one decision (*Taormina* v. *Antelope Mining Co., supra,* 110 Cal.App.2d 314) in holding Pickrell to have been a participant in the sale.

*Taormina,* however, does not compel the conclusion that Pickrell participated here. In that case, the purchase price was paid directly to the corporation of which the individual defendants were directors. They actively negotiated and actually executed the agreement with plaintiffs for sale of the stock. Participation of the directors as individuals was clear. In another decision relied upon by plaintiffs (*Auslen* v. *Thompson,* 38 Cal.App.2d 204 [101 P.2d 136]), a corporation and its directors contrived a scheme to issue shares in Nevada to a trustee, with intent to evade the California Corporate Securities Act by having the trustee resell the shares in California for the benefit of the corporation. Thompson, whose executrix was the appellant, was not a director when the stock was issued in Nevada. He became a director, however, before the sales were made in California, and the court found that he had full knowledge of the scheme at the time these sales were made, and nonetheless sanctioned and approved such sales. Since the corporation was a principal actor, the knowing participation of the directors in its actions bound them individually.

Here the corporation was not a seller. Individuals invalidly sold shares issued to them and they, rather than the corporation, received the proceeds. Even though Pickrell's position as president and director of the corporation could make him a participant in corporate action, assuming knowledge on his part, they do not necessarily involve him as a participant in the acts of the Wisers as individual shareholders.

The fact that Pickrell did not personally benefit from the transaction does not preclude judgment against him (*Auslen* v. *Thompson, supra,* 38 Cal.App.2d 204, 213; *Gormly* v. *Dickenson, supra,* 178 Cal.App.2d 92, 103). He must, how-

ever, have participated in the illegal sale. If such participation cannot be found in his responsibility for acts of the corporation, it must be personal and direct, with actual or constructive knowledge of the illegality.

 There is some evidence from which inferences may be drawn that Pickrell did personally participate with the Wisers in their sales. The announced reluctance of the trial court to hold Pickrell liable leaves us, however, unable to conclude that the same result would have been reached in the light of the conclusions stated in this opinion. We have pointed out that the authorities do not require, although they do permit, a finding of personal participation by Pickrell. In the light of the trial court's memorandum, the word "participation," as used in the findings, appears ambiguous. The evidence would support an inference that Pickrell knew or should have known that the Wisers intended to or did sell without consent of the commissioner. But there is nothing to show that the trial court considered this element in its definition of "participation" by Pickrell. We have determined that action upon the representation as to the price paid by Kirk is barred and we note that while the court found that Emerson Wiser knew this representation to be false, Pickrell merely "should have known in the exercise of reasonable care." This representation, although asserted by only one plaintiff, could, even though no longer actionable, be considered as an element going to intent as well as to the fact of participation. Nonetheless, we feel that fairness requires remand to the trial court for redetermination of the issue as to Pickrell. On the present record, findings either way are warranted, and we do not remotely suggest what determination should be made, as this is a question of fact wholly for the trial court.

 We find no merit in plaintiffs' appeal from the judgment of nonsuit as to defendant Kirk. The judgment was entered before the court was authorized to weigh the evidence and required to make findings (see Code Civ. Proc., § 631.8, added in 1961). Thus plaintiffs are entitled to the full benefit of the rule that nonsuit is warranted, even in a nonjury case, only when no inference which would support a plaintiff's judgment can be drawn. But there is no evidence even remotely suggesting that Kirk in any way participated in the sales or induced the purchases. Although Ophelia did state generally to Kirk that he "was thinking of" buying stock in the corporation, no mention was made of the prospective seller or the manner of sale. Kirk did not know until after the purchases

that plaintiffs had acquired stock. There is no suggestion that Kirk knew that the sales had been, much less that they were to be, made without consent of the commissioner. There is no room to imply any misrepresentation by him inducing the sales, and the nonsuit was proper.

Plaintiffs sought, and the court denied, a provision that defendants "are subject to arrest and imprisonment upon this judgment." Plaintiffs assign error in this refusal. Although the remedy of civil arrest under judgment for fraud has been recognized in older cases (*Ex Parte Lamson,* 50 Cal. 306; *Stewart* v. *Levy,* 36 Cal. 159, 166-168), the remedy is almost never used (3 Witkin, Cal. Procedure, 2026-2027) and we find no authority suggesting that it is a matter of right. Certainly the discretion to refuse it is broad, and is not abused here.

The findings are modified by striking therefrom the items relating to fraudulent misrepresentation as to the price paid by Kirk for his shares. The judgment against defendants Wiser is affirmed. The judgment against defendant Pickrell is reversed and remanded with direction to the trial court to redetermine the issue as to that defendant, with or without the taking of additional evidence, as that court may deem fit. The judgment of nonsuit in favor of defendant Kirk is affirmed. Denial of the remedy of civil arrest is affirmed. Plaintiffs shall recover costs from defendants Wiser. Defendant Pickrell is awarded his costs against plaintiffs. Defendant Kirk is awarded his costs against plaintiffs.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied June 20, 1963, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied July 17, 1963.