THE CITY OF CHICAGO, Plaintiff-Appellant, v. SIEVERT ELECTRIC COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—2371

Opinion filed June 21, 1985.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Robert J. Dargis, Assistant Corporation Counsel, of counsel), for appellant.

Leo N. Cinquino, of Righeimer, Righeimer & Martin, P.C., of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff-appellant, the city of Chicago, appeals from the circuit court's dismissal of its suit for rent against defendants Sievert Electric Company and Paul M. Sievert. The city contends that the trial court erred in finding for defendants on two independent grounds: (1) that the city had failed to allege that it had made a written demand for possession, (2) that the city should be estopped from obtaining rent because its actions had misled defendants into believing that they need not seek an alternative site for their plant outside of Chicago.

We affirm.

The city's complaint alleged that on April 29, 1981, it had filed a suit to acquire defendants' property (located in Chicago at 1325-51 North Bauwans and 1334 North Ashland Avenue) by eminent domain. On May 17, 1982, a judgment order was entered by the Honorable Alfred T. Walsh (*nunc pro tunc* to May 6, 1982) vesting fee simple absolute title in the city upon its payment of the just compensation already determined by the jury. On June 8, 1982, the city acquired title by depositing the requested amount with the county treasurer of Cook County for the benefit of Sievert Electric Company.

On June 28, 1982, the city requested in writing that Sievert pay a monthly rental fee to the city, effective July 1, 1982, for the use of the property. On July 7, 1982, and again on July 14, 1982, the city sent its "standard lease agreement" to Sievert requiring a monthly payment. Sievert failed to sign the lease agreement and refused to pay any rent although it used and occupied the property until December 1982.

In its complaint the city sought $21,954 in rent for the six-month period of July 1982 to December 1982. The city also sought costs and

attorney fees.

Defendants filed two motions to dismiss. One motion, filed pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) asserted that the city had failed to allege that it had made a written demand for possession. Defendants contend that such a demand is a prerequisite to a suit for rent when title has been acquired through judicial judgment, citing section 9—201(4) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 9—201(4)).

In their second motion to dismiss, filed pursuant to the involuntary dismissal provisions of section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), defendants alleged that the city led defendants to believe they would be able to relocate to another site in the city. However, after a series of negotiations the city failed to respond to defendants' offer to purchase the substitute land. Defendants alleged that their action forced them to stay in their old facilities for several months after the completion of the eminent domain proceeding. On this ground defendants urged that the court "should not allow the City to benefit by this improper action" and should dismiss the suit. The motion was not originally supported by affidavit despite the requirement of section 2—619 that this be done when the grounds of the motion do not appear on the face of the pleading attached. However, on the day of the hearing on these motions Judge Walsh (to whom the cause was ultimately assigned) entered an order reciting that by agreement of the parties, defendants' section 2—619 motion was amended to include the verification of Paul M. Sievert, *nunc pro tunc* as of May 13, 1981, the date that motion was filed. The actual affidavit has not been included in the record on appeal.

At the hearing on defendants' motion to dismiss, Paul M. Sievert testified that Sievert Electric was currently located in Melrose Park. It had previously conducted business at the Chicago location for 69 years.

In September of 1977, Richard W. Albrecht, the city's deputy project planning coordinator, and Robert Littlebridge, director of economic planning for the city's department of planning, visited Sievert's office and told him he should not proceed with his published plans for further expansion of his plant there because of the city's proposed development of the area. They offered the city's assistance in helping Sievert to relocate elsewhere in Chicago. Sievert agreed to cooperate.

In early 1980 Sievert had a series of meetings with city officials concerning a substitute site in Chicago. The city furnished him with a list of possible sites. After inspecting and evaluating them, Sievert determined that one would suit his needs.

Sievert testified that he did not look for other sites because he be-

lieved the city would cooperate with him in obtaining the substitute site.

After the city filed its condemnation suit in April 1981, Sievert continued to meet with city officials about the site he had selected. At the city's request he presented architectural plans of what he proposed. On December 7, 1981, he formally presented the city with an offer to purchase the land.

After the offer was made Sievert again met with city officials about the project. He continued to believe that the city would respond to the offer; however, the city never did so. At one point prior to the trial of the condemnation action the city's economic development commission was ordered by the court to respond one way or the other to the offer. Sievert went to their offices, but the commission was unavailable. Even after the condemnation trial was completed the city did not respond. It was then that Sievert began to look for another site.

After hearing additional argument from counsel the court granted both of defendant's motions.

Opinion

We first consider the sufficiency of defendants' estoppel argument. As a preliminary matter, the city contends that this argument should not have been considered because of defendants' failure to file a supporting affidavit with the original motion. Although the city did object to this motion on this ground at the hearing, we have noted that the court issued an agreed order amending that pleading to include Paul M. Sievert's verification. Even assuming that the city persisted in its objection to the amendment, the determination to allow the later filing of the affidavit was a matter within the trial court's discretion. See *Tomlen Group, Ltd. v. Goldfarb* (1981), 101 Ill. App. 3d 154, 158, 427 N.E.2d 1047, 1049.

■■ More importantly, in this cause the actual testimony of the pertinent witness was adduced at the hearing. This procedure is specifically authorized by section 2—1103(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1103(b)). We find no merit to the city's contention that this testimony took them by surprise. At the hearing, counsel for the city admitted that at least a week and a half before the hearing he was aware the witness would testify and that defense counsel offered to allow him to take Sievert's deposition. Furthermore the original motion, although inartfully drafted with no specification of the term estoppel, clearly sufficed to inform the city that defendants would contend that the city's actions and defendants' reliance on them should bar the city from claiming rent. The testimony of

Sievert at the hearing merely elaborated on this same theory.

The city does not contest that estoppel may bar a claim for rent. (*Sievert v. Pornell* (1951), 191 Ore. 637, 231 P.2d 791; *Fired v. Fisher* (1938), 328 Pa. 497, 196 A. 39; 24 Ill. L. & Prac. *Landlord & Tenant* sec. 442 (1980).) Rather, the city contends that defendants have failed to establish any positive actions by it which induced defendants' action, a prerequisite to the application of estoppel against a municipal corporation. (*New-Mark Builders, Inc. v. City of Aurora* (1967), 90 Ill. App. 2d 98, 102, 233 N.E.2d 44, 46.) The general principles controlling here were stated in *New-Mark*:

> "Whether the doctrine of estoppel may be applied against a municipal corporation depends upon a consideration of all the circumstances of the case. *** If under all of the circumstances, the affirmative acts of the public body have caused another to take certain actions which have created a situation where it would be inequitable and unjust to permit the public body to, in effect, retract what it previously had done, the doctrine of estoppel may be applied against it." *New-Mark Builders, Inc. v. City of Aurora* (1967), 90 Ill. App. 2d 98, 102, 233 N.E.2d 44, 46.

In this cause the uncontradicted testimony of defendant Paul M. Sievert established that the city actively encouraged him to seek an alternate site for his plant in the city. The city furnished him with a list of possible sites from which he selected one that met his needs. At the city's request he furnished architectural plans for the site. Ultimately he made a formal bid for the property. The city never responded to this bid in any manner. According to Sievert, he had looked for no other site because the city's actions led him to believe there was no need to do so. Even after the city had obtained its condemnation judgment it did not give Sievert a counteroffer or any response to his offer. The city now seeks to obtain rent for the several months that it took Sievert to relocate his plant after this.

■ As we have noted, the city chose not to present any evidence on this motion and indeed did not even cross-examine defendants' witness. Based on this evidence, we find that the circuit court properly determined that it would be inequitable to permit the city to collect rent for the period that its actions had caused defendants to remain at the Chicago location.

The city contends that the trial court based its decision on matters outside of the record. During the hearing, the following colloquy occurred:

> "THE COURT: I want to say for the record that I am aware of things that have happened in this case. I am not sure that

counsel for the City has. I know Mr. Sievert, and he has testified in this court before. I know him from inspecting—the Jury view of the premises involved, so through that I am aware of Mr. Sievert and the high class kind of man he is.

And my total impression of this whole case and what the City has done has not been favorable as far as the City is concerned.

Now, I want to state that for the record because I know a lot more about this case than you may know that I know, and I just want you to know that up front.

COUNSEL FOR THE CITY: I understand that.

Your Honor, I by no means want to attack Mr. Sievert's integrity. I hope that your Honor will be able to set aside any feelings that he has about this case and decide the merits of this motion based solely on the motion.

THE COURT: What I am trying to tell you is that I know more about this case than what the record reflects here because I tried the case. I also went with the Jury on the view of the premises. I met Mr. Sievert at that time, and that is the important thing.

I wanted to make it clear at this point."

■ In the absence of any contrary evidence it is presumed that a trial court has considered only properly admitted evidence in reaching its finding. (*In re Sparrow* (1978), 59 Ill. App. 3d 731, 739-40, 376 N.E.2d 236, 243.) We construe the trial court's remark as being intended to advise the city's counsel, who was apparently new to the case, of the court's prior involvement in the condemnation suit. We find nothing improper in this advisement and nothing to indicate that the court relied on anything other than the evidence properly presented at this hearing.

Because of our determination that the trial court properly granted defendants' motion to dismiss based on estoppel, we do not reach the merits of the city's contention concerning the sufficiency of the defendants' other motion to dismiss.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN and O'CONNOR, JJ., concur.